## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| **DIANE YVONNE LOCKER,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **Case No. 2:17-cv-342** |
| : | |
| : | |
| **NANCY A. BERRYHILL,** : | |
| **Acting Commissioner,** : | |
| **Social Security Administration,** : | |
| : | |
| **Defendant.** : | |
| : | |

### <u>REPORT AND RECOMMENDATION</u>

Plaintiff Diane Yvonne Locker ("Plaintiff") filed a complaint, pursuant to 42 U.S.C. §§ 405(g) that seeks judicial review of the final decision of Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claim for Disability Insurance Benefits ("DIB") pursuant to Title II. Both parties filed Motions for Summary Judgment, ECF Nos. 13 and 15, with briefs in support, ECF Nos. 14 and 16, which are now ready for recommended resolution.

This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 10. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 13, be **GRANTED**

to the extent it seeks reversal and remand of the Commissioner's decision, the Commissioner's Motion for Summary Judgment, ECF No. 15, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") on or about August 28, 2013 alleging that she became disabled beginning August 1, 2013 due to degenerative disc disease, hypertension, osteoarthritis, and allied disorders. R. at 155; ECF No. 14 at 1 (citing R. at 18)[1]. Plaintiff retroactively amended the alleged onset date of disability from August 1, 2013 to December 1, 2014. ECF No. 16 at 2; R. at 191, 257. Plaintiff's application was initially denied on January 15, 2014. ECF No. 16 at 2 (citing R. at 87-97). Her application was denied again upon reconsideration on August 29, 2014. ECF No. 16 at 2 (citing R. at 107-12). Plaintiff requested a hearing in front of an administrative law judge on September 8, 2014, and such hearing was held on March 29, 2016 before Administrative Law Judge Jeffrey M. Jordan ("the ALJ"). R. at 16. The ALJ issued his written decision on April 28, 2016, denying Plaintiff's application and finding Plaintiff was not disabled. R. at 16-25. On May 2, 2017, the Appeals Council for the Office of Disability and Adjudication ("Appeals Council") denied Plaintiff's request for review of the ALJ's decision, making the ALJ's hearing decision the final decision of the Commissioner. R. at 1-4. After exhausting her administrative remedies, Plaintiff filed her Complaint for judicial review of the Commissioner's final decision on July 18, 2017. ECF No. 3. The Commissioner filed an Answer on September 21, 2017. ECF No. 7. Both parties filed Motions for Summary Judgment, ECF Nos. 13 and 15,

---

[1] "R." refers to the certified administrative record that was filed under seal on September 21, 2017, ECF No. 8, pursuant to Local Civil Rules 5(B) and 7(C)(1).

with briefs in support, ECF Nos. 14 and 16. The Commissioner also filed a brief, ECF No. 17, in opposition to Plaintiff's Motion for Summary Judgment (ECF No. 13). The matter is now ripe for recommended adjudication.

## II. RELEVANT FACTUAL BACKGROUND

In her applications filed on August 28, 2013, Plaintiff alleged disability due to "degenerative disc disease; hypertension; osteoarthr[itis] and allied disorders" with an amended disability onset date of December 1, 2014. R. at 18, 155. Plaintiff's medical records indicated additional conditions including hyperlipidemia, bilateral carpal tunnel syndrome, eczema, and diabetes mellitus.[2] R. at 18-19, 339-43. At the time of the ALJ's April 28, 2016 decision, Plaintiff was an English-speaking, sixty-three old woman who completed the eleventh grade and had past relevant work experience as a laundry attendant and an office cleaner. R. at 18-25; ECF No. 16 at 3 (citing R. at 57-58). At the March 29, 2016 hearing before the ALJ, Plaintiff appeared and was represented by an attorney, Beverly Jean Taylor ("Plaintiff's counsel"). R. at 30-34. Robin Stromberg, an impartial Vocational Expert ("the VE") also testified. R. at 32, 57-59. The ALJ stated the record would be left open so Plaintiff could supplement the record with her 2015 tax return to show how much she earned from babysitting for the year 2015, which Plaintiff estimated to be around $7,000.00 or $8,000.00. R. at 57-60. The record included the following factual background for the ALJ to review:

Plaintiff resides in a townhouse in Virginia Beach with her two granddaughters and two great-granddaughters. R. at 34-35. She completed high school through the eleventh grade and did not obtain her GED. R at 35. With regard to her work history, Plaintiff most recently

---

[2] As discussed in Part III, *infra*, the ALJ determined those additional conditions to be "non-severe because they are responsive to medication, do not require any significant medical treatment, or do not result in any continuous exertional or nonexertional functional limitations." R. at 18-19, 339-43.

worked as an office cleaner, where she cleaned office buildings by picking up trash and dusting. R. at 35-36. Plaintiff testified that the nature of cleaning job required her to push a cart loaded with cleaning supplies, and stand and walk for the duration of her shift, which was typically around three hours long. R. 36-37. Plaintiff also stated that she worked at the office cleaning job until the "end of 2014" and stated that her reason for leaving was because her right knee would "give out" and she would have to sit down during her shift, and her employer did not approve. R. at 37. Prior to the office cleaning position, Plaintiff testified that she worked at a hotel doing laundry and described the job as putting the laundry into the washing machine, then moving it to the dryers, then unloading the laundry and folding it. R. at 37-38. She stated that she was required to stand for the duration of the shift. R. at 38-39. Plaintiff noted that she worked at "the Airport Hilton" in 2005, where she stocked the serving bars with snacks and drinks. R. at 39-40. Once the hotel discontinued that particular service, she was moved to the laundry attendant position. R. at 39-40. Before starting the job at the Airport Hilton, Plaintiff testified that she worked for J.H. Laudner Company for "about [eleven] years" processing meat on an assembly line, a job that required her to stand. R. at 40-41.

With regard to her medical conditions, Plaintiff testified she was in a car accident in 1999, which led her to get an x-ray of her back. This imaging confirmed she had arthritis in her spine. R. at 42. She stated that she regularly deals with back pain as a result of the arthritis and can only sit or stand for around an hour and a half without pain, and the pain is alleviated if she lies down. R. at 43. Plaintiff also testified that she has carpal tunnel in both wrists which results in pain if she "overwork[s]" her hands. R. at 44. Plaintiff also reported having degenerative cartilage in her knee and "bursitis/arthritis in both of [her] shoulder blades" which

4

caused decreased mobility in her shoulder joints. R. at 44-48. Plaintiff was primarily treated by Dr. Jo-Anne Guzman-Lee ("Dr. Guzman-Lee") at Amelia Medical Associates, and Dr. Guzman-Lee prescribed Plaintiff's medications. R. at 262, 339-421. Plaintiff's list of prescribed medications included Amlodipine, Valsartan, Metformin, Meloxicam, Oxycodone, and Simvastatin. R. at 262. She stated that she does not have difficulties or side effects from the medications she is taking. R. at 53-54. In August 2015, Dr. Guzman-Lee referred Plaintiff to Dr. Bradley Butkovich ("Dr. Butkovich") for her orthopedic conditions, and Dr. Butkovich prescribed Mobic for Plaintiff's joint pain, and offered her cortisone shots, which she declined. R. at 372-74.

With regard to her daily life functions, Plaintiff stated that she cleans, usually one room per day or one floor at a time if she is vacuuming. R. at 48. However, she claimed she is unable to clean bathrooms and floors, so her granddaughters provide assistance. R. at 49. Plaintiff reported that she cooks on holidays but can "only do a little at a time." R. at 49. She stated that she does go grocery shopping, but does so over the span of a couple days due to her need to take breaks and rest. R. at 49. Plaintiff noted that sometimes she can pick up items like a bag of sugar or a gallon of milk and other times, she does not have the strength. R. at 50. She does not do any kind of yard work, but she does drive herself. R. at 50-51. When asked about any participation in social activities, she stated that she attends church. R. at 51. Plaintiff also noted that she has difficulty lifting her arms due to her shoulder pain, so her grandchildren occasionally assist her with bathing and dressing. R. at 52. Plaintiff stated that navigating the stairs is a challenge for her, and while she uses the stairs once or twice a day on average, some days she cannot utilize the stairs at all. R. at 52-55. She testified that she sleeps until around 11:00 a.m.

or 12:00 p.m. and then lies down for most of the day. R. at 53. Plaintiff testified that she is not receiving a pension or unemployment benefits, but she had previously received "unemployment," although not from her previous employers. R. at 55-56. She received "self-employment" earnings in the year 2014 from babysitting her grandchildren, but no longer receives payment for babysitting. R. at 55-56. Plaintiff noted that she still occasionally watches one of her great-grandchildren, but she is not left alone with the children and is no longer is paid to watch them. R. at 56-57.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Mastro*, 270 F.3d at 177. The ALJ must determine if

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit");

6

*Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law: First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 1, 2014, the amended alleged onset of disability date. R. at 18.

Second, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease; hypertension; osteoarthr[itis] and allied disorders." R. at 18. The ALJ concluded these aforementioned impairments "significantly limit the [Plaintiff's] ability to perform basic work activities and are consequently severe." R. at 18. In arriving at this conclusion, the ALJ determined that Plaintiff's various other conditions were "non-severe because they are responsive to medication, do not require any significant medical treatment, or do not result in any continuous exertional or nonexertional functional limitations." R. at 18-19, 339-43.

At the third step, the ALJ considered the aforementioned "severe" impairments (to wit: degenerative disc disease, hypertension, osteoarthritis, and allied disorders) and ultimately found that Plaintiff did not have an impairment or combination of physical and/or mental impairments

that met or medically equaled any of the listed impairments in the relevant regulation.[3] R. at 19-20.

The ALJ noted that Plaintiff's degenerative disc disease does not meet Listing 1.04 criteria because there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.[4] R. at 19. The ALJ further acknowledged that Plaintiff's impairments do not meet the criteria for Listing 1.02 because "they do not result in the inability to ambulate effectively."[5] R. at 19. With regard to Plaintiff's hypertension, one of her "severe impairments," the ALJ noted that her "physical exams show[ed] no significant complications from . . . high blood pressure." R. at 22-23. The ALJ also noted that in a physical exam on May 7, 2015, Plaintiff's "blood pressure was high but she denied symptoms such as headache, chest pain, shortness of breath, and edema." R. at 23 (citing R. at 340-41). During the same exam, Plaintiff also reported that she had forgotten to take her medication "in the last two days." R. at 23 (citing R. at 340-41). In follow up exams occurring on August 10, 2015, November 10, 2015,

---

[3] The relevant regulation herein is 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 19-20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). Specifically, 20 C.F.R. § 404.1525 describes the "Listing of Impairments" as "impairments [for each major body system] that [Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity" where the impairments themselves are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sellars v. Colvin*, No. 7:15-CV-124-FL, 2016 WL 4083376, at *3 (E.D.N.C. Aug. 1, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)).
[4] As the Fourth Circuit has observed:
   Listing 1.04A further describes the criteria a claimant must meet or equal to merit a conclusive presumption of disability arising out of compromise of a nerve root or the spinal cord: [e]vidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by signs of limitation of motion or reflex loss, and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]
*Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).
[5] The relevant listed impairment, Listing 1.02, states that a plaintiff is:
   [D]isabled if [he or she] has "[m]ajor dysfunction of a joint" due to any cause where a major dysfunction of a joint is defined as a "gross anatomical deformity" and "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints" and also with "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s)."
*Sellars v. Colvin*, No. 7:15-CV-124-FL, 2016 WL 4083376, at *3-4 (E.D.N.C. Aug. 1, 2016).

8

and January 20, 2016, Plaintiff's blood pressure was somewhat elevated but did not otherwise display any abnormal findings. R. at 23 (citing R. at 361, 381-83, 407).

Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with the following limitations: "[Plaintiff] has to avoid climbing ladders, ropes, and scaffolds, but she can perform other postural movements on a frequent basis . . . [and] requires work involving no more than a limited education."[6] R. at 19. The ALJ noted that he considered all of Plaintiff's symptoms in light of the "objective medical evidence" based on the pertinent criteria. R. at 19.[7]

The ALJ performed a credibility analysis by reviewing the record as a whole and determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded that the Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 21. The ALJ stated that although Plaintiff alleged that she was disabled, she continued to work and "in 2014, she made over $14,000.00, which included approximately $7,500.00 from self-employment." R. at 21 (citing R. at 184-87). With regard to Plaintiff's medical history, the ALJ stated that the "medical record overall does not support disability." R. at 21. The ALJ acknowledged that Plaintiff has a history of "hypertension, degenerative joint disease and degenerative disc disease in the lumbar spine, eczema, hyperlipidemia, carpal tunnel syndrome, osteoarthritis of the knee, degenerative joint disease of the shoulder region, and diabetes mellitus . . ." but went on to state that the findings supporting the diagnosis of the conditions were "mild-moderate," and therefore not severe

---

[6] *See infra* note 7.
[7] Such pertinent criteria includes 20 C.F.R. § 404.1529 and SSRs 96-4p with consideration given to the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

9

enough to support a claim of disability. R. at 21-24 (citing R. at 266, 331-38, 339-421, 422-38). The ALJ noted that Plaintiff's treatment has been "conservative" and there is "evidence of noncompliance." R. at 22. For example, Plaintiff declined a Kenalog injection for her knee and physical therapy in June 2014. R. at 22 (citing 331-38, 373). She declined cortisone shots in August 2015. R. at 22 (citing 331-38, 373). In November 2015, Plaintiff again declined physical therapy. R. at 22 (citing R. at 384). In January 2016, Plaintiff was prescribed Meloxicam and Percocet, and was advised to take Meloxicam daily but only take Percocet "as needed" and only "when in severe pain." R. at 22 (citing R. at 409-11). Plaintiff stated that she did not use Meloxicam as ordered because she "forgot to take it." R. at 22 (citing R. at 409-11). Plaintiff also declined cortisone shots in January 2016, stating that her knees were "not doing that bad." R. at 22 (citing R. at 450-58). The ALJ noted that Plaintiff's physical exams showed "no significant complications," on exam dates including August 2013, October 2013, June 2014, May 2015, August 2015, November 2015, and January 2016, R. at 22-24 (citing R. at 331-38, 339-421, 439-49, 450-59. The ALJ attributed significant weight to the opinion of the non-examining State agency medical consultants who "found that [Plaintiff] can do medium work." R. at 24 (citing R. at 64-72, 74-83). The ALJ acknowledged that while the State agency medical consultants are not "treating sources," their opinions are consistent with other findings in the record regarding Plaintiff's conditions, including various imaging studies that indicated "mild-moderate impairment" and physical examinations that did not produce results that would "prevent the [Plaintiff] from performing medium work such as significant problems with her hands (except for one exam which showed thenar atrophy), neurologic deficits, or lack of stability in her lower extremities." R. at 24 (citing R. at 266, 339-421, 422-38, 450-59). The

ALJ stated that none of Plaintiff's "treating, examining, or consulting medical sources has reported findings and opined that the [Plaintiff] cannot do work within the established residual functional capacity"[8] and therefore the ALJ found that Plaintiff can perform "less than the full range of medium work."[9] R. at 24.

The ALJ determined that Plaintiff is capable of performing any past relevant work (as a laundry attendant), which "does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." R. at 24 (citing 20 C.F.R. § 404.1565). The ALJ stated that Plaintiff's previous work experience as a laundry attendant and officer cleaner was "past relevant work" and she had performed these jobs at "SGA levels within the past 15 years" according to her testimony. R. at 24 (citing 161-76, 184-87, 189, 215-22). The ALJ noted that the demands of working as a laundry attendant do not exceed the Plaintiff's residual functional capacity ("RFC") and she performed the job at a "light/unskilled" level considering the physical demands of the job and her role (she was not a supervisor or "lead worker"). R. at 24 (citing R. at 215-22). The ALJ pointed to the testimony of the vocational expert ("VE") who confirmed that "the job is light/unskilled and that an individual with the [Plaintiff's] residual functional capacity could perform [the] job" which is consistent with the information found in the *Dictionary of Occupational Titles* ("DOT").[10] R. at 24-25 (citing R. at 215-22).

---

[8] Indeed, the record is actually devoid of any treating or examining medical opinion regarding Plaintiff's exertional abilities, as noted in Part V.A, *infra*, where the ALJ stated, "[n]one of the [Plaintiff's] treating, examining, or consulting medical sources has reported findings and opined that the [Plaintiff] cannot do work within the established residual functional capacity." *See* R. at 24. Furthermore, the ALJ attributed significant weight to the opinion of the State agency medical consultants, but they did not personally have any contact with Plaintiff. *See* R. at 205, 228.

[9] Under 20 C.F.R. §§ 404.1567(c) and 416. 967(c), medium level work "requires 'lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.'" *Craig v. Chater*, 76 F.3d 585, 591-92 (4th Cir. 1996).

[10] The VE's testimony is supported by the DOT information which provides that if a job is unskilled, the job only takes up to thirty days to learn. Plaintiff performed unskilled jobs for more than thirty days. R. at 24.

Therefore, the ALJ determined that Plaintiff was not under a disability, as defined by the Social Security Act, from December 1, 2014, the amended alleged disability onset date, through April 28, 2016, the date of the ALJ's decision. R. at 24-25 (citing 20 C.F.R. § 404.1520 (f)).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

As posited by Plaintiff, the relevant inquiries before the Court are whether the ALJ fully

12

developed the record as he had a duty to do so, even though Plaintiff was represented by counsel, and whether the ALJ erred by not considering Plaintiff's work history when assessing her credibility. *See* ECF No. 14 at 4-11 (citing *Stuckey v. Colvin*, No. 2:14CV656, 2016 WL 403651 (E.D. Va. Jan. 11, 2016), *report and recommendation adopted*, No. 2:14CV656, 2016 WL 413223 (E.D. Va. Feb. 2, 2016)). *See also Rosado v. Berryhill*, No. 4:16-CV-00173, 2018 WL 816578 (E.D. Va. Jan. 22, 2018), *report and recommendation adopted*, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018) (remanding for the ALJ to explicitly provide the basis for his decision).

Relying on *Stuckey*, Plaintiff argues that the ALJ erred by not fully developing the record. ECF No. 14 at 4-8 (citing *Stuckey*, No. 2:14CV656, 2016 WL 403651, at *11-14 (E.D. Va. Jan. 11, 2016), *report and recommendation adopted*, No. 2:14CV656, 2016 WL 413223 (E.D. Va. Feb. 2, 2016)). Plaintiff contends that because no treating physician provided a medical source statement after Plaintiff's onset disability date, the medical evidence was insufficient, therefore the ALJ should have either sought such a statement or ordered a consultative physical exam based on his obligation to develop the record when the record is insufficient. *See* ECF No. 14 at 5-7. Plaintiff also argues that the ALJ erred by not considering her strong work history when he assessed her credibility. *See* ECF No. 14 at 8-11.

In response to the first argument, the Commissioner contends that because Plaintiff was represented by counsel, there is a presumption that Plaintiff presented her best case, and therefore it was Plaintiff's counsel's responsibility to present the missing evidence.[11] *See* ECF

---

[11] The undersigned notes that at the hearing, Plaintiff was represented by Beverly Taylor of Citizens Disability but in this pursuit of judicial review she is represented by Robert Gillikin of Rutter Mills and Karl Osterhout of Osterhout Berger Disability Law. R. at 7; ECF No. 14 at 12.

No. 16 at 12-18.[12]  The Commissioner also argues that the evidence in the record was not insufficient or inconsistent and thus supported the ALJ's decision. ECF No. 16 at 12-18.  In response to the second argument, the Commissioner contends that Plaintiff's work history does not entitle her to enhanced credibility. ECF No. 16 at 19-20.

## A. The ALJ erred by not fully developing the record.

The *Stuckey* Court held that "[r]emand is necessary '[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant.'" *Stuckey v. Colvin*, No. 2:14CV656, 2016 WL 403651, at *12 (E.D. Va. Jan. 11, 2016), *report and recommendation adopted*, No. 2:14CV656, 2016 WL 413223 (E.D. Va. Feb. 2, 2016) (citing *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)). In *Stuckey*, the plaintiff asserted that the ALJ had a duty to solicit a medical opinion from her treating physician and request a consultative mental health examination because her impairments and subsequent limitations were unascertainable without such evidence. *Id.* at *12. In *Lehman v. Astrue*, the court noted that "[i]t is well established in the Fourth Circuit that an ALJ 'has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the [Plaintiff] when that evidence is inadequate.'" *Lehman v. Astrue*, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). The *Lehman* Court also noted the standard regarding the duty of the ALJ is "'whether the record contained sufficient medical evidence for the ALJ to make an informed decision' regarding the [Plaintiff's] impairment." *Lehman v. Astrue*, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (citing *Craft v. Apfel*, 164 F.3d 624 (4th Cir.

---

[12] The Commissioner's brief states, "[w]hen a [plaintiff] is represented by counsel, the ALJ has the right to assume that counsel is presenting the [plaintiff's] strongest case for benefits." ECF No. 16 at 13 (citing *Glenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)).

1998)).

Here, the ALJ had a duty to develop the record, even though Plaintiff was represented by counsel. *See Stuckey*, No. 2:14CV656, 2016 WL 403651, at *12 (E.D. Va. Jan. 11, 2016). Importantly, the ALJ had no medical opinion upon which to rely that was generated after December 1, 2014, the disability onset date. Plaintiff's medical history in the record includes: various imaging studies between April 2013 and November 2015, hospital records spanning dates from March 3, 2013, to September 3, 2013, laboratory test reports from August 29, 2013 to April 1, 2014, office treatment records that date from August 22, 2013 to June 3, 2014, hospital records from May 7, 2015 to January 22, 2016, and office treatment records from August 12, 2015 to January 26, 2016. R. at 266-429. The ALJ referred to the imaging studies and physical examinations in his decision to show that they did not support any significant impairment. R. at 21-24. The ALJ relied upon, and attributed significant weight to, the opinion of the non-examining State agency medical consultants, as provided in the Disability Determination Explanations dated January 9, 2014 and August 29, 2014. R. at 24 (citing R. at 64-71, 74-83). The opinions of the State medical consultants were based only on Plaintiff's records up through the early months of 2014. Because Plaintiff amended her onset date of disability to December 1, 2014, the disability determinations considered by the ALJ were performed months before Plaintiff's claimed disability onset.

Because their opinions pre-dated the disability onset date, the State agency medical consultants necessarily never considered those imaging studies and medical records generated after Plaintiff's alleged onset of disability. No treating physician offered an opinion in a medical source statement after the disability onset date, and in the interim between the onset date,

15

December 1, 2014, and the hearing in front of the ALJ on March 29, 2016, no physician performed an assessment as to whether Plaintiff's medical conditions affected her ability to work.   Plaintiff received medical care and imaging studies between the State medical consultant's disability determination and the hearing, but the medical treatment and findings were not accounted for, and no physician gave an opinion as to the significance of the information and the extent, if any, to which it impacted Plaintiff's ability to work.  ECF No. 14 at 6-7 (citing R. at 342, 361, 372, 382, 384, 408, 430-31, 439, 452).[13]   Absent such a medical evaluation, the ALJ had a duty to develop the record to enable him to conclude whether these medical conditions affected Plaintiff's ability to work, because he is not qualified to offer a medical opinion.[14]   *See Lehman v. Astrue*, 931 F. Supp. 2d 682, 692-693 (D. Md. 2013).  The ALJ could have developed the record by requesting either a medical source statement from a treating physician, or a consultative examination, according to the pertinent regulations, 20 C.F.R. § 404.1520b(c)(1)-(4), which provide ways to develop the record.[15]  He did neither.

Consequently, the undersigned **FINDS** that the ALJ should have further developed the record by either requesting a Medical Source Statement from a treating physician or a

---

[13] Additionally, the ALJ acknowledged the absence of a medical opinion in the record from a provider who personally treated or examined Plaintiff, stating "[n]one of the [Plaintiff's] treating, examining, or consulting medical sources has reported findings and opined that the [Plaintiff] cannot do work within the established residual functional capacity." *See* R. at 24.

[14] An ALJ cannot offer a medical opinion, such as one that suggests that, despite Plaintiff's osteoarthritis, she is able to walk for more than an hour or stand for more than ten minutes, and a medical doctor cannot offer an opinion that Plaintiff's osteoarthritis means she is disabled and cannot work.  The former is the physician's province and the latter is the Commissioner's.

[15] The relevant regulation, 20 C.F.R. § 404.1520b(c)(1)-(4) states the following ways to develop the record:
> (i) We may recontact your medical source. We may choose not to seek additional evidence . . . from a medical source if we know . . . the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the [] report to the source for review, signature, and return;  (ii) We may request additional existing evidence; (iii) We may ask you to undergo a consultative examination at our expense (*see* §§ 404.1517 through 404.1519t); or we may ask you or others for more information.

20 C.F.R. § 404.1520(b).

16

consultative examination.   Without any medical opinion from the time period following Plaintiff's disability onset date, there is insufficient evidence to determine whether the ALJ's decision was supported by substantial evidence when he decided Plaintiff could return to her prior job and therefore was not disabled as of the amended onset date, December 1, 2014.

**B. The ALJ's consideration of Plaintiff's credibility does not warrant remand.**

The second issue presented in this case is whether the ALJ erred by not considering Plaintiff's work history when assessing her credibility as to whether her "impairments could reasonably be expected to cause the alleged symptoms." R. at 21.   Plaintiff argues that the ALJ erred by insufficiently considering her work history when assessing her credibility, relying on 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 96-7p.   ECF No. 14 at 8-11.   The Commissioner argues that Plaintiff's work history does not entitle her to enhanced credibility.   ECF No. 16 at 19-20.   The undersigned does not interpret Plaintiff's claim as being that she was entitled to **enhanced** credibility based on her work history, but rather that her extensive work history was required to at least be considered by the ALJ when determining her credibility, and that he failed to do so.

Agency policy requires that work history be considered as part of the RFC assessment. *See* 20 C.F.R. § 404.1529(c)(3) ("Because symptoms sometimes suggest a greater severity of impairments than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . .   We will consider all of the evidence presented, including information about your prior work history . . ."); SSR 9-8p ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as: ... [e]vidence from attempts to work").   Plaintiff also relies on SSR 96-7p for the proposition that

agency policy requires that

> [a]ssessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to . . . prior work record and efforts to work.

SSR 96-7p.[16]

At the administrative hearing, Plaintiff's work history was discussed during her testimony,[17] and during that of the vocational specialist. R. at 35-41, 57-58. In his decision, the ALJ referenced Plaintiff's work history, R. at 20, and discussed Plaintiff's "past relevant work as a laundry attendant and office cleaner" and the demands of those jobs, as well as the VE's testimony that "an individual with the [Plaintiff's] [RFC] could perform [the] job," R. at 24-25 (referring to Plaintiff's job as a laundry attendant in particular). While it is not altogether clear the precise extent to which the ALJ specifically considered Plaintiff's work history in evaluating her credibility, his references to it are sufficient to establish that it played a role with respect to his credibility determination and RFC assessment.

This case may be distinguished from this Court's determination of the same issue in a previous case when it noted that the ALJ fails to adequately consider the plaintiff's work record when assessing his credibility when he fails to describe or acknowledge the plaintiff's work

---

[16] SSR 96-7p, "Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements," was superseded by SSR 16-3p, "Titles II and XVI: Evaluation of Symptoms in Disability Claims," on March 28, 2016, one day before Plaintiff's administrative hearing before the ALJ. SSR 16-3p does not include the language from SSR 96-7p directing that "[a]ssessment of credibility ... must be based on a consideration of [*inter alia*] ... prior work record and efforts to work." It does, however, provide that, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms," the Commissioner will consider "any other relevant evidence in the individual's case record" and provides that "[m]edical sources may offer diagnoses, prognoses, and opinions as well as ... prior work record, [and] efforts to work". SSR 16-3p.

[17] The ALJ ceded questioning of Plaintiff to her attorney, instead of conducting the examination himself. *See* R. at 34-55.

18

history. *Rosado v. Berryhill*, No. 4:16-CV-00173, 2018 WL 816578, at \*14-16 (E.D. Va. Jan. 22, 2018), *report and recommendation adopted*, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018) (citing 20 C.F.R. § 404.1529(c)(3)).[18]   In *Rosado*, the ALJ referenced the plaintiff's work history only generally, and "nowhere in [the] Decision did the ALJ actually describe Plaintiff's work history or explain what effect, if any, it had on his credibility determination." No. 4:16-CV-00173, 2018 WL 816578, at \*14-16 (E.D. Va. Jan. 22, 2018), *report and recommendation adopted*, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018).   Since the Fourth Circuit has held that the ALJ properly assesses a plaintiff's RFC when the ALJ accounts for a plaintiff's "reported activities, *prior work history*, and [the treating physician's opinion", it behooves an ALJ to clearly articulate the role a plaintiff's work history plays in his credibility analysis. *Mastro v. Apfel*, 270 F.3d 171, 179-80 (4th Cir. 2001) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)) (emphasis added).   While the ALJ here could have more precisely articulated the role of Plaintiff's work history in his credibility assessment, he did sufficiently reference it in his RFC assessment such that remand is not warranted on this basis.[19]

## VI. RECOMMENDATION

For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 13) be **GRANTED**, the Commissioner's Motion for Summary

---

[18] 20 C.F.R. § 404.1529(c)(3) provides that "because symptoms sometimes suggest a greater severity of impairments than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. . . . We will consider all of the evidence presented, including information about your prior work history . . ." *Rosado v. Berryhill*, No. 4:16-CV-00173, 2018 WL 816578, at \*14-16 (E.D. Va. Jan. 22, 2018), *report and recommendation adopted*, No. 4:16CV173, 2018 WL 813891 (E.D. Va. Feb. 9, 2018).

[19] Nonetheless, as the Court advised in *Rosado*, upon remand "the ALJ would be wise to articulate what role, if any, Plaintiff's work history played in his credibility findings" because "while a strong work history alone does not compel a credibility finding, agency policy does require that it at least be considered as part of the RFC assessment." No. 4:16-CV-00173, 2018 WL 816578, at \*14-16 (E.D. Va. Jan. 22, 2018), *report and recommendation adopted*, No. 4:16CV173, 2018 WL 813891.

Judgment (ECF No. 15) be **DENIED,** and the final decision of the Commissioner be **VACATED** and **REMANDED.**

## VII. <u>REVIEW PROCEDURE</u>

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 6, 2018